Robert Lee GRAHAM, Plaintiff,

v.

STATE DEPARTMENT OF CORRECTION, Defendant,

and

David L. Jones, Secretary of the North Carolina Additional Department of Social Rehabilitation and Control, Defendant.

No. 73–133.

United States District Court, W. D. North Carolina, Charlotte Division.

April 7, 1975.

---

No appearance for plaintiff.

Jacob L. Safron, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N. C., for defendants.

## ORDER

McMILLAN, District Judge.

In June 1973 Robert Lee Graham filed a claim asserting that his summary demotion from honor grade status because of an alleged escape was a violation of his constitutional right to procedural due process.

Upon being informed by the Attorney General of North Carolina that no hearing was given in demotion cases such as Graham's, where the prisoner had not pleaded guilty or been convicted on an escape charge, this court held that minimal due process requirements would have to be met before Graham could be demoted. The court noted in its order of September 11, 1973, that at a minimum Graham should receive a written copy of the charges against him; have a hearing at which he could explain his actions and confront his accuser; and receive a written explanation by the hearing officers of their decision.

Acting on the appeal of the Attorney General, the Court of Appeals has vacated this order and remanded the case for reconsideration in light of Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and for the designation of proper party defendants.

The court allows the petitioner to amend his complaint to add David L. Jones, Secretary of the North Carolina Department of Social Rehabilitation and Control, as a party defendant.

## A. WOLFF v. McDONNELL

The decision in *Wolff* dealt specifically with disciplinary actions where good time could be lost, and the Supreme Court noted that it did not imply that the procedures required in *Wolff* would be mandated where lesser penalties such as "loss of privileges" were imposed. *Wolff* at fn. 19. The court did note that minimal procedural safeguards would be required where there was a "major change in confinement" and stated that solitary confinement was a "major change." *Id.*

This court is now faced with deciding in light of *Wolff* whether the loss of honor grade status reflects a major change in confinement which triggers due process protections similar to those outlined in *Wolff*.

An honor grade prisoner in the North Carolina Corrections System is at a minimum eligible for supervised off-site work programs and emergency leaves for funerals, critical illness in his immediate family, or emergency medical treatment. If a prisoner maintains his honor grade status, he become eligible for unsupervised work release, unsupervised study release, community training programs and a number of other "over the wall" programs. None of these honor grade programs are available to prisoners in lower security classifications.

■ Both honor grade status and solitary confinement are departures from the ordinary confinement situation where the prisoner is kept within the prison walls and among the general prison population. Solitary confinement is recognized as differing significantly from ordinary confinement in that it further isolates the prisoner from any sort of normalized dealings with other people and further emphasizes the control which the institution can exert over the prisoner. *Wolff, supra,* recognizes that a change from ordinary to solitary confinement is a major one. Honor grade status which allows the inmate some opportunities to get beyond the prison walls and to re-establish contact with his family and friends is likewise a significant departure from ordinary confinement; the withdrawal of honor grade status which removes any opportunity for the prisoner to get outside the walls is also a major change in confinement in the terms expressed in *Wolff*.

This determination is consistent with the two reported federal court decisions since *Wolff* which have examined the need for due process in prison proceedings. In Clutchette v. Procunier, 510 F.2d 613 (9th Cir. 1974), the Court of Appeals for the Ninth Circuit concluded that any loss of the "small store of privileges" which prisoners were afforded was significant to trigger the due process protections enunciated in *Wolff*. The Court noted that the term privileges encompassed a host of matters ranging from simple amenities to such cherished concerns as access to schooling, visitors, and institutional employment. These cherished concerns are analogous to, and actually include, some of the programs available to honor grade prisoners in North Carolina.

The other recently decided case, Daigle v. Hall, 387 F.Supp. 652 (D.Mass. 1975), is also consistent with this opinion. In *Daigle* the court concluded that "any classification which imposed a substantial adverse change in the conditions of confinement because of specific prior conduct" was "disciplinary" and subject to the due process standards of *Wolff*. Although *Daigle* dealt with inmates whose reclassification placed them in isolation, its principle applies equally when a prisoner faces the loss of all "over the wall" privileges that he has attained as an honor grade prisoner because of an alleged though unproven escape charge.

## B. DUE PROCESS REQUIREMENTS

As noted earlier in this opinion, the original *Graham* decision was that, prior to demotion from honor grade status on

unproved escape allegations, a prisoner should have written notice of the charges against him; a hearing at which he could explain his actions and confront his accuser; and a written explanation of the hearing officers' decision. In light of *Wolff* and *Clutchette* several elements of the "process due" require re-examination.

 1. *Right to Confrontation.*— The Supreme Court in *Wolff* stated that the right to confront adverse witnesses was not constitutionally required "at the present time," and the decision to allow cross-examination should remain with prison officials. The *Wolff* decision does not indicate if this discretion is absolute, or, if it is subject to some form of judicial scrutiny, how such scrutiny should be accomplished. The Ninth Circuit decision in *Clutchette* did not discuss the threshold issue whether scrutiny was necessary; however, acting upon the premise that it was, the Court concluded that prison authorities when they denied confrontation were required to make a written explanation of the reasons for the denial. This record was thought to be essential if there was to be a meaningful review of the denial, and the Court concluded that the lack of such a record would be *prima facie* evidence of abuse of the prison authorities' discretion.

Although perhaps not constitutionally required at this time, confrontation of adverse witnesses adds much to both the essential fairness of a hearing and the ability of the fact-finder to determine the facts. Thus, this court concludes that some scrutiny over the decision to deny confrontation is required, and the court adopts the *Clutchette* requirement that an explanation of the decision be made in the record of each reclassification procedure where confrontation is denied.

 2. *Right to Counsel Substitute.* —Although the original *Graham* decision did not include a requirement that any type of counsel be available at the reclassification hearing, the discussion in *Wolff* on the necessity of counsel has caused the court to reconsider the issue. In *Wolff* the Court determined that counsel substitute should be made available whenever the prisoner cannot competently handle his case without such help. Accordingly, this court finds that if counsel substitute is requested by a prisoner on the grounds that he is unable to competently prepare his case, and the request is denied, the record of the reclassification proceeding should contain findings to support the denial. The court assumes that any conscientious hearing officer who recognizes that a prisoner is unable competently to present his case, will not hesitate to appoint counsel substitute even where it has not been requested.

Therefore, it is ordered that if Robert Lee Graham has not now been convicted of escape and continues to assert that his conduct was legal and authorized, he either be reinstated to honor grade status or afforded:

(1) A written copy of the charges against him;

(2) A hearing at which he has an opportunity to explain his actions;

(3) An opportunity to confront the witnesses against him or a written explanation why confrontation has been denied;

(4) Counsel substitute, if requested by Graham, or a written finding of facts showing that the inmate can adequately understand the issues and present his case; and

(5) A written explanation by hearing officers of their decision.

The Attorney General is requested to advise this court by April 30, 1975, as to what course of action the state will follow or has followed.